## THE OLD RELIABLE.

### RELIABLE TOWING CO. v. RODGERS SAND CO.

(Circuit Court of Appeals, Third Circuit. January 26, 1921. Rehearing Denied March 3, 1921.)

#### No. 2591.

1. **Collision ☞74—Libelant, for damages to barge, held not negligent.**

   In a suit to recover for damages to a barge, due to a collision, while tied up to the guide wall of a dam in the Ohio river, circumstances *held* insufficient to establish negligence on the part of the libelant in overloading.

2. **Collision ☞74—Evidence held not to show negligence in manner of mooring tug and tow.**

   In a suit to recover for damages to barge by reason of a collision while moored to the guide wall of a dam in the Ohio river, evidence *held* insufficient to satisfy court, on appeal by defendant, that libelant was negligent in the place or manner of mooring its tug and barge, or in fastening the same together.

3. **Collision ☞70—Failure to prevent swamping of barge not sufficient to establish negligence in providing splashboards.**

   Where a barge was sunk by collision while moored, that splashboards did not prevent it sinking did not establish negligence on the part of libelant in providing splashboards.

4. **Collision ☞16—Navigator liable for error of judgment.**

   No man is infallible, and there are certain errors of judgment for which the law does not hold a navigator liable; but he is liable for an error of judgment which a careful and prudent navigator would not have made.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Collision ⊜≈22—"Inevitable accident" defined.**

The term "inevitable accident," applied to collision cases, means an accident which both parties have endeavored to prevent by every means in their power, with due care and caution, and a proper display of nautical skill, and it is not an "inevitable accident" where a master proceeds carelessly, and afterwards circumstances arise when it is too late and impossible for him to do what is fit and proper to be done.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Inevitable Accident.]

**6. Collision ⊜≈74—Trial judge justified in conclusion that defendant was solely chargeable with accident.**

In a suit to recover for damages to a barge by reason of a collision while moored near a dam in the Ohio river, trial judge *held* justified in his conclusion that defendant was solely chargeable with the accident and that it was not an inevitable accident.

**7. Collision ⊜≈140—Damages cannot exceed value of vessel and cargo in collision.**

In a suit for the recovery of damages to and detention of a barge, swamped in a collision, plaintiff cannot recover more than the value of the barge and cargo, although the cost of raising, docking, and repairing exceeded such amount.

Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. S. Thomson, Judge.

Suit by the Rodgers Sand Company against the steamship Old Reliable, owned by the Reliable Towing Company. Decree for plaintiff, and defendant appeals. Affirmed.

Lowrie C. Barton, of Pittsburgh, Pa., for appellant.
Charles S. Crawford, of Pittsburgh, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

DAVIS, Circuit Judge. This was a suit by the Rodgers Sand Company, libelant below, against the steam towboat Old Reliable, to recover for damages done to, and for the detention of, Flat No. 5 and its cargo by the steamboat Old Reliable at Davis Island dam on the Ohio river. On October 31, 1918, the steamboat Margaret left Ambridge, on the Ohio river 10 miles below, with two barges in tow, all belonging to libelant, and proceeded to said dam, to the pins in the guide wall of which she tied up at about 9 o'clock in the evening. It was the intention to pass through the locks, but she could not do so because of the strong current which flowed through the gates, both of which were open, or to go over the wickets on the north side of the dam, 300 feet of which were down, thus creating a pass through which boats often went. The flats were fastened end to end, and the head one was No. 5. They were tied together by means of chains and lashings. Each was 90 feet long, and No. 5 extended somewhere between 20 and 60 feet below the lower end of the guide wall, and the other flat and the steamboat Margaret, which was tied to the stern of the second flat, extended still lower down the river. A strong current from the shore, coming against the boats,

⊜≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

seemed to neutralize the current from the other side, so that the boats lay there quietly and in apparent safety.

Some time after the Margaret with her tow had tied up to the guide wall, and while they were lying there, the steamboat, Old Reliable, with a gasoline barge "hitched on her head," came up the river and attempted to navigate the pass in the wickets, but could not do so on account of the swift current. She then "flanked" over toward the guide wall, with her stern out in the river, and the head of the gasoline barge over toward Flat No. 5. In this position, with her wheel still running ahead, the barge in front was pushed over against Flat No. 5, and as the head of the barge, in dropping back along the side of the flat, approached its lower end, the weight of the barge increased by the force of the current in one direction and the Old Reliable, with her wheel running, in another, shoved the lower end of the flat around and under the guide wall, whereupon the head end swung out, the fastening with the other part of the tow was broken, and in this position the flat was swamped and sank.

The libelant charged that the attempt to tie up and moor the Old Reliable and her tow near the Margaret and her tow was done so negligently as to cause the Flat No. 5 to sink, which resulted in the injury complained of. This was denied by claimant, who alleged that the accident was due to the negligence of the libelant, in that the flat was negligently "hitched" or tied up, was overloaded, had no splashboards to prevent the water from flowing over the gunwales, causing it to sink, and that the repairs were made necessary by the negligence of the libelants in raising the flat.

Upon the pleadings and proofs, the District Court found the libelant was not negligent as charged by claimant, but that the accident was due solely to the negligent navigation of the Old Reliable, and awarded damages against her of $1,200, with interest and costs. The case is here on appeal from the decree of the District Court.

[1] The evidence, in our opinion, does not show that the flat, loaded with 155 tons of gravel, was overloaded or improperly loaded. The Margaret, with the two flats fastened end to end, had stemmed the tide from Ambridge, 10 miles down the river, against a swift current, and was moored at the dam in apparent safety. Up to the time the Old Reliable with the gasoline barge flanked over against the flat, nothing whatever had happened to indicate that it was overloaded. Its sinking under the circumstances is not sufficient, in our opinion, to establish the negligence charged of overloading.

[2] The head flat No. 5, was tied to the pins in the guide wall. The libelant alleges that the flat extended only 20 feet below the lower end of the wall, having 70 feet beside it, while claimant says that only 30 feet of the flat was against the wall and 60 feet below the end, and the other flat, 90 feet long, and the Margaret, 125 feet long, were still below No. 5. This was a place where boats usually tied up, and there is nothing to indicate that it was an improper place. Negligence cannot, therefore, be based upon the place where the flat was moored. Claimant contends that negligence consisted in not having the flat tied with lashings in addition to chains. Libelant denies the

fact upon which negligence is based. Capt. Cavett's testimony, which seems to us reliable, shows that the flats—

"were lashed together with an inch and a quarter line on each side, and had also ratchets and chain on, a three-quarter inch chain. * * * We generally use a long lashing and put it over—it goes back three times—that is, thribble; the lashings I am positive that we had on the inside was thribble. I seen it; I seen it [the lashing] hanging there after it was broke."

Regardless of this testimony, the fact is that the Margaret and the two flats moored and had remained in safety until struck by the gasoline barge. There is nothing in the evidence indicating that they would not have continued to remain in safety, but for the Old Reliable. The evidence does not satisfy us that the libelant was negligent in the place or manner of mooring the Margaret and her tow, or of fastening the same together.

[3] The libelant's witnesses testified that the flat had splashboards on its head, which was apparently all that was required in navigating the Ohio river. At least, they were sufficient for the trip against the strong tide from Ambridge. We think the evidence shows the presence of splashboards ordinarily adequate for the trip. That they did not prevent the flat from sinking under the circumstances is not sufficient to establish negligence on the part of libelant, and this is the proposition to which the question is reduced under the evidence.

Reviewing the whole testimony, we are of the opinion that the District Court was right in its conclusion that the libelant was not guilty of any negligence. Was this, then, an inevitable accident, a theory advanced first before us? Or was it an accident due to the negligence of the respondent?

[4] No man is infallible, and there are certain errors of judgment for which the law does not hold a person liable; but he is liable for an error of judgment which a careful and prudent navigator would not have made. The W. E. Gladwish, 17 Blatchf. 77, 83, Fed. Cas. No. 17,355. The evidence shows that the Old Reliable could have backed out without flanking over to the flat at all. If she had done so, the accident would have been avoided. The error in judgment, if there was such in this case, may consist in flanking over to the flat under the circumstances. If it does, the inability of the captain to avoid the accident after the Old Reliable with her tow was over there does not relieve claimant of the consequences of the error in the first place. On the other hand, the error may be due to the manner in which the boats flanked over to the flat. If the Old Reliable had been so navigated that the gasoline barge had come alongside of the flat with their sides parallel, no excessive strain or pressure would have come against any particular part of the flat. But in flanking over the stern of the Old Reliable was left or thrown out into the river and her wheel continued to run ahead. In this position she 'pushed the head of the gasoline barge against the flat and in dropping back, when the head of the barge, scraping the side of the flat, reached the lower end, which was not supported by the guide wall, the pressure of the barge, pushed by the Old Reliable, her wheel going ahead, with the current running swiftly against their sides, was so great as to

shove the lower end of the flat under the guide wall and broke it loose from the tow. The head end swung out into the river and the flat was swamped and sank.

[5, 6] The term "inevitable accident," applied to cases of this kind, means an accident which both parties have endeavored to prevent, by every means in their power, with due care and caution, and a proper display of nautical skill. It is not an "inevitable accident" where a master proceeds carelessly, and afterwards circumstances arise when it is too late and impossible for him to do what is fit and proper to be done. Union Steamship Co. v. New York & Virginia Steamship Co., 65 U. S. 307, 313, 16 L. Ed. 699. The instant case is clearly not one of "inevitable accident." The accident was due to negligence, and the learned trial judge was justified in his conclusion that the claimant was "solely chargeable with the accident."

Claimant contends in its answer that, if it is liable at all, it is liable only for the unloading and raising of the flat and for the gravel necessarily lost in so doing, all of which, together with $5 for one day's detention, would not amount to more than $111.40. In its argument here, claimant admits, if liable, damages might amount to $377.05.

[7] The flat was 90 feet long, 16 feet wide, and 6 feet deep. It was built in 1900. It was repaired in 1915 at a cost of $882.27, and again a year later at a cost of $79.52. It appeared to be in good condition at the time of the accident, two years later. The trial judge valued the boat and cargo at $1,200, and that valuation appears to us fair. Damages claimed by libelant are $1,355.18 for raising, docking, and repairing; $445 for detention 89 days, and $93 for 155 tons of gravel, all of which was lost, making a total of $1,893.18. This being more than the value of the flat and cargo, may not be allowed. Are these various items of damages, notwithstanding, excessive? We have carefully examined them, and, if any of them be excessive, we cannot say that, after deducting the excess, the fair, just, and reasonable amounts left do not aggregate $1,200, for which the District Court entered judgment.

The appeal will therefore be dismissed, and the decree of the District Court affirmed.